## Carleton, surv. ᵛs. Neal.

The plaintiffs sued the defendant in trespass on the case, in form *ex delicto*, alleging that one F. was indebted to them; that F. had obtained a judgment against the defendant for a larger sum than his indebtedness to them; that F., who was insolvent, had agreed with them that they should be paid out of his judgment against the defendant, who, having notice thereof, but intending to cheat and wrong the plaintiffs, settled with F. himself, said judgment, and took his receipt for the same: *Held*, that the plaintiffs were not entitled to recover.

*Error to the Circuit Court of Union County.*

The Hon. A. A. Stith, Circuit Judge.

Mr. Carleton, contended that, as but part of the judgment against the defendant was assigned to the plaintiff and his partner, the acts of the defendant in getting control of the judgment, and causing the same to be satisfied, was a fraud upon the plaintiff, for which an action would lie. *Jeremy B*. 3, *pt*. 2, *p*. 358; *Story's Eq. sec*. 186. That an equitable interest, vested in the plaintiff by the assignment, and that the acts and bad faith of the defendant was a damage to him.

Lee, for the defendant. The agreement between the parties was merely personal, and created no specific lien upon the judgment. *Dunn vs. Snell*, 15 *Mass*. 481; 23 *Verm*. 531; 6 *Cush*. 282; 2 *Greenlf*. 322; *Willard's Eq. Jur*. 464; 3 *Barb. S. C. R*. 262; 18 *Wend*. 319.

Mr. Justice Scott delivered the opinion of the Court.

The plaintiffs declared in *trespass upon the case*, in form *ex delicto;* and alleged that one Ferdinand L. Neal was indebted to them in the sum of $140, for professional services rendered

him, the plaintiffs being lawyers: that a part of this sum was for such services rendered as junior counsel—Askew having been the senior and leading counsel—in obtaining a judgment in the Probate Court, in favor of said Ferdinand, against the defendant in this suit, for the sum of $196 62: that Ferdinand objecting to the first mentioned sum as too large, and being destitute of any means to pay the same, other than the afore-said judgment in his favor, it was agreed between the plaintiffs and the said Ferdinand, that they, the said plaintiffs, should receive in full satisfaction of their claim, the sum of $125, part and parcel of said judgment, and that Askew, the leading counsel for the collection of the same, should be notified of the arrangement, and instructed by the said Ferdinand, to pay the sum of $125 to the plaintiffs as soon as collected: that the plaintiffs having accepted said sum of $125, so to be paid in full satisfaction of their claim of $140, did, thereupon, with said Ferdinand, duly give notice of all these matters to the said Askew, and, at the same time, the said Ferdinand instructed the said Askew to pay as thus stipulated, whenever that amount should be collected out of said judgment: that, afterwards, the defendant in this suit, with a full knowledge of this arrangement, and, also, of the aforesaid pecuniary condition of the said Ferdinand, intending to wrong and injure the plaintiffs, by preventing any of the proceeds of said judgment from going into the hands of said Askew, and thereby defeating his paying the said sum of $125 to the plaintiffs as aforesaid, "went to the said Askew, in company with the said Ferdinand, and, then and there, got him to give over and relinquish, to the said Ferdinand, the full control and collection of said judgment," the said defendant giving to the said Askew his own note for a sum sufficient to cover all liens, claims and control that the said Askew set up to said judgment, which Askew accepted, and gave up said control to the said Ferdinand, without reserving the said $125, and without the knowledge and consent of the plaintiffs: that, afterwards, when the plaintiffs had been informed of these actings and doings, and

there was still due, upon said judgment, full as much as said sum of $125, they specially notified the said defendant of their aforesaid claim to said sum of $125, part and parcel of said sum of $196 62, and forbid him to pay that sum· over to the said Ferdinand, and demanded of him to pay the same to them, the plaintiffs; but that nevertheless, the defendant, in order to wrong and cheat the plaintiffs, settled up in full the entire amount of said judgment, to and with the said Ferdinand, and took his receipt therefor, and now holds the same, as its terms purport, as evidence of the full and entire satisfaction of said judgment, and utterly refuses to pay any part of said $125 to the plaintiffs.

By these alleged acts and doings the plaintiffs claim that they have been damaged by the defendant, and therefore sue him in *tort*.

To this voluminous declaration, which we have thus endeavored to condense, without impairing the force of any one of its numerous allegations, the defendant interposed a demurrer for divers causes, the greater part of which are substantially the following, to wit:

1st. The plaintiffs show no legal right of action against defendant.

2d. If any, it should have been in form *ex contractu*, and not *ex delicto*, as declared.

3d. They fail to show that the legal right to collect the judgment, or any part of it, ever passed out of Ferdinand; or to the plaintiffs.

4th. They aver no legal right in themselves to control the judgment, have execution thereof, or to acknowledge its satisfaction, either in whole, or in part, if payment had been made to them by the defendant.

5th. They fail to aver that the defendant was discharged from legal liability, to the extent of $125, to Ferdinand, by means of the alleged assignment of that sum to the plaintiffs or otherwise.

6th. If the alleged assignment to the plaintiff was such a

one as to make the defendant legally bound to pay them $125, part and parcel of the judgment against him, then the alleged payment of that sum to Ferdinand is a nullity. If, on the other hand, it was valid, he cannot in a court of law, be bound to pay it a second time, either by an action *ex contractu* or *ex delicto*.

The court sustained the demurer, and the plaintiffs refusing to amend, but electing to stand upon their declaration, the Court rendered final judgment for the defendant, and the plaintiffs brought their case here by writ of error.

And to say the least of it, it seems rather a novel one. If there be precedent for it, it has not been cited. And if it can be sustained, it would seem to be a compendious method of getting at an equitable remedy by means of an action upon the case in form *ex delicto.* Giving the greatest possible force to every allegation in the declaration, and the plaintiffs' alleged rights as to the $125, part and parcel of the $196, adjudged against the defendant in favor of Ferdinand, they were but equitable: so their right of lien for a reasonable fee, upon that judgment, as junior counsel, which they substantially allege they relinquished when stipulating with Ferdinand for $125, was but equitable, and not legal, technically so. So, if they had obtained a valid assignment of the entire judgment, instead of the alleged assignment of $125, part and parcel of the same, it would have been but an equitable right. It is true, that in the latter case, although an equitable right only would be acquired, a court of law would have afforded remedy in allowing execution of the judgment; not in the *name of the equitable owner*, however, but in that of the *dry legal owner*. But if the equitable owner should desire to make the judgment available otherwise, as by action of debt, or *scire facias* to revive, in his *own name*, his rights would not be recognized in a court of law at all. Could he, then, obviate the difficulty by simply changing the form of the action, and declaring as for a tort, upon the fancied ground that the defendant in the judgment had designed to cheat and defraud the plaintiff, because he had refused to

pay him when the judgment of the court had been solemnly pronounced that he should pay another person, and that was still in force?  Or, if satisfied according to its legal tenor and effect, although to the detriment of equitable rights claimed therein, would the latter thereby grow up into legal rights? The essential character of such rights could not be changed simply by the adoption of a different form of remedy for their vindication; nor by the breach of any mere moral obligation, of which a court of law had no cognizance.

In general, courts of law vindicate legal rights, and when they afford a remedy upon equitable ones, it is in the name of the party in whom the legal title to sue resides.  It is true that they, as well as the equity courts, often afford remedy in cases of fraud, but it does not follow from that, that because fraud has intervened a purely equitable right is thereby cognizable in a court of law, and that, in such cases, the distinction between courts of law and courts of equity, as to the remedies they afford, is to be confounded.

In the case made by the declaration, there is no allegation of any breach of duty, or obligation by the defendant to the plaintiff, growing either out of law, or out of any alleged contract between them.  So far as the law is concerned, that had already declared, in the judgment of its proper court, that the defendant should pay Ferdinand, and not the plaintiffs, and had annexed no conditions that this sentence should be defeated by any subsequent creation of equitable rights in the sum adjudged, so far as her courts were concerned.  And it is not pretended that the defendant had contracted to pay the plaintiffs, which might have been law as between the parties had he done so upon a sufficient consideration.  It is therefore difficult to see how a court of law could afford the plaintiffs a remedy in their own name, when no legal rights of theirs had been invaded, whether that remedy might have been sought in form *ex delicto*, or in any other form of action.

It is very true, that it has been frequently said, and doubtless, not without legal reason, that an action upon the case in as-

sumpsit is often, in its practical operation, to be greatly likened to the operation of a bill in equity: but it does not follow from that, that every action upon the case presents that similitude, or that they ever lay to vindicate purely equitable rights.

We fully concur with the court below, in the opinion that the demurrer was good, and shall accordingly affirm the judgment.